IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROBERT EAGLE,<br><br>                Plaintiff,<br><br>v.<br><br>SMG SALT PALACE,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:17-cv-1132-DB<br><br>District Judge Dee Benson |

Before the court is Plaintiff's Motion for Partial Summary Judgment. (Dkt. No. 19.) The Motion has been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

Facts

The court, as it must, "examine[s] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

Plaintiff began his employment with Defendant in November of 2014, as an Event Supervisor. (Dkt. No. 20 at 10, ¶¶1-2.) On May 16, 2016, Plaintiff contacted Defendant's third-party Family Medical Leave Act "FMLA" administrator, Matrix, to request intermittent FMLA leave for his own serious health condition. (Dkt. No. 24-7.) After several attempts to obtain

medical certification satisfactory to Matrix, Matrix approved Plaintiff's request for intermittent leave on August 11, 2016. (Dkt. No. 24-8—24-11.) Matrix based its intermittent leave approval on certification from Plaintiff's pulmonary specialist, Dr. Shah. (Dkt. No. 24-10.) Matrix granted intermittent leave "from 03/13/2016 to 03/12/2017" and approved Plaintiff's absences on May 6, 7, 11, and 12. (Dkt. No. 24-11.) The document memorializing the leave approval also stated: "Your Leave is certified for 3 Day(s), at a frequency of 2 events per 12 Month(s)." (*Id.*)

On September 1, 2016, Plaintiff contacted Matrix to receive FMLA leave approval for his absences from August 25- September 1, 2016. (Dkt. No. 24-12.) The Matrix representative informed Plaintiff that she would seek certification for his absence from Dr. Shah. (*Id.*) On September 7, 2016, Plaintiff again contacted Matrix and was again informed that the Matrix representative would seek certification from Dr. Shah. (*Id.*) On September 8, 2016, the Matrix representative requested certification from Dr. Shah and was informed that Dr. Shah would not provide additional certification without seeing Plaintiff again. (*Id.*) On September 9, 2016, the Matrix representative relayed this information to Plaintiff. (*Id.*)

On September 10, 2016, Plaintiff returned to work and presented a doctor's note to Defendant's Human Resource Manager, Bradley Christensen. (Dkt. No. 22, ¶18.) The Instacare "Work Release Note" stated: "EAGLE, ROBERT E was seen at instacare today for a valid medical reason. Please released [*sic*] them [*sic*] from school/work August 25th, September 9 and 10, 2016 per M.D. order. Patient is released to go back to work." (Dkt. No. 24-15.) Based on that note, Mr. Christensen permitted Plaintiff to return to work. (Dkt. No. 22, ¶ 18.) On October 4, 2016, Mr. Christensen reported the excused hours/ dates from August 25 to September 10 to Matrix. (*Id.*, ¶19.)

On October 11, 2016, Plaintiff visited Dr. Shah for a follow-up visit and to request an adjustment to his FMLA form. (Dkt. No. 24-18.) Plaintiff reported to Dr. Shah that his condition had not improved, that he was experiencing chest pain, cough, and hemoptysis, and that he feared he would lose his job, as he had "missed work a lot lately due to these symptoms." (*Id.*) Dr. Shah stated that he would send his clinic notes to Plaintiff's employer and inform them that the amount of time Plaintiff would need to be out would be an estimate, since he did not yet have a clear diagnosis. (*Id.*)

On October 14, 2016, Plaintiff began another absence from work that continued through November 3, 2016. (Dkt. No. 24-14.) On or about October 19, 2016, Plaintiff called Matrix to attempt to update his FMLA leave parameters. (*Id.*) Matrix called Plaintiff back and left him a voicemail instructing him to have his doctor fax medical documentation to Matrix. (Dkt. No. 24-19.) On October 25, 2016, Plaintiff again called the Matrix representative to see if she had received the updated parameters from Dr. Shah. (Dkt. No. 24-20.) She informed him that she had not received the documentation. (*Id.*) The record does not show any effort made by Matrix or Defendant to obtain certification directly from Dr. Shah during this time period.

On November 4, 2016, Plaintiff met with his direct supervisor and Mr. Christensen and informed them that he was prepared to return to work. (Dkt. No. 22, ¶ 32.) Plaintiff presented an Instacare "Work Release Note" that appeared almost identical, apart from the dates listed and small changes in wording, to the note Plaintiff had presented upon his return to work in September. (Dkt. No. 24-24.) The note stated: "EAGLE, ROBERT E was seen at the Memorial Instacare on 11/03/16 for a valid medical reason. Please excuse him/her from time missed from work/school 10/14/2016, 11/02/2016, and 11/03/2016 for a valid medical illness. Per Dr. Willis,

3

EAGLE, ROBERT E is allowed to return to work as of 11/03/2016." (*Id.*) Mr. Christensen "told Plaintiff that the InstaCare note was insufficient and that he would be out of work until he provided a doctor note from his treating physician." (Dkt. No. 22, ¶ 32.)

On November 7, 2016, Plaintiff wrote a letter to Mr. Christensen asking why he had not been allowed to return to work. (Dkt. No. 19, Exh. F.) He also informed Mr. Christensen that he would have to seek employment elsewhere until his leave status was resolved and reaffirmed that he was ready and able to work as of November 4, 2016. (*Id.*)

On November 11, 2016, Plaintiff provided Mr. Christensen with a note from Dr. Shah which stated:

> Robert Eagle has been under my care for hemoptysis and pulmonary nodules. His evaluation is currently underway but he continues to have intermittent symptoms. Please excuse him from work 08/26/2016 to 09/10/2016 and 10/14/2016-11/3/2016. I expect him to improve over the next few months. Please contact our office if any additional information is needed.

(Dkt. No. 24-25.) Mr. Christensen did not allow Plaintiff to return to work at that time, nor did he contact Dr. Shah's office for additional information. He instead forwarded the note from Dr. Shah to Matrix. (Dkt. No. 22, ¶37.)

Neither Plaintiff nor Defendant heard anything from Matrix regarding Plaintiff's leave status from November 11, 2016 to December 1, 2016. On December 1, 2016, after multiple emails from Defendant, a Matrix representative stated that she would review Plaintiff's status and report back to Defendant that day. (Dkt. No. 24-28.) Matrix then called Plaintiff and told him that he must "open a new leave for November by contacting the intake department." (Dkt. No. 24-29.) That same day, Matrix also faxed a certification request to Dr. Shah's office. (Dkt. No. 24-42.)

The next day, on December 2, 2016, Plaintiff called in a new claim notice to Matrix. (Dkt. No. 24-35.) Also on December 2, Dr. Shah returned Matrix's completed certification request form, which answered each treatment-related question, and described the uncertainty of Plaintiff's prognosis and symptoms moving forward. (*Id.*) That same day, Plaintiff obtained another certification from Dr. Shah stating that he was cleared to return to work. (Dkt. No. 19, Exh. J.) On December 6, 2016, Matrix again contacted Dr. Shah's office, requesting specific dates Dr. Shah treated Plaintiff and stating: "Please confirm there is no need for a reduced work schedule or an absence after 11/3/16."

On December 8, 2016, Plaintiff again wrote Mr. Christensen asking why he had not been allowed to return to work, describing the certifications he had submitted and reiterating that he was ready and willing to work as of November 4, 2016. (Dkt. No. 19, Exh. L.) On December 9, 2016, Matrix informed Defendant that it had received confirmation from Dr. Shah that Plaintiff was able to work as of November 4, 2016. (Dkt. Nos. 22-37, 22-39.) On December 13, 2016, Plaintiff was allowed to return to work. (Dkt. No. 19, Exh. Q, 54:24-25; 55:1.) Plaintiff continued to work for Defendant until he resigned on or about June 30, 2018. (Dkt. No. 20, ¶ 5.)

Defendant's FMLA policy provides that when an employee requests FMLA leave for his or her own serious illness, "medical certification is required from a health care provider confirming that an employee's serious health condition prevents him/her from performing his/her duties." (Dkt. No. 20-1.) The policy further provides that the "certification must be provided in a timely manner, not to exceed fifteen (15) days." (*Id.*) Defendant's sick leave policies state: "If employees are absent for three (3) or more consecutive days due to illness, they are required to

provide written documentation from their doctor certifying that they are able to resume normal work duties before they will be allowed to return to work." (Dkt. Nos. 20-3, 20-4.)

Discussion

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment"—Defendant here. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

Plaintiff has moved for summary judgment on two theories of recovery under the FMLA: 1) interference with his right to return from FMLA leave, pursuant to 29 U.S.C. §2615(a)(1), and 2) retaliation for exercising his FMLA rights, pursuant to 29 U.S.C. § 2615(a)(2).

*Plaintiff's Interference Theory*

Section 2615 of the FMLA provides that "it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subsection." 29 U.S.C. § 2615(a)(1). This prohibition includes interference with an employee's reinstatement following leave. *Id.*; *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) citing *Metzler v. Fed. Home Loan Bank of Topika*, 464 F.3d 1164, 1181, 29 C.F.R. § 825.216(a)(1). "To establish an FMLA interference claim, the plaintiff must demonstrate: (1) that ... [he] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with ... [his] right to take FMLA leave, and (3) that the employer's action

6

was related to the exercise or attempted exercise of [his] FMLA rights." *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1159 (10th Cir. 2009) citing *Metzler,* 464 F.3d at 1180.

Here, the parties do not dispute that Plaintiff was entitled to take FMLA leave. The parties also do not dispute that Plaintiff was eventually granted FMLA leave for all of his absences from work. The parties further agree that Plaintiff was ultimately determined to be able to return to work as of November 4, 2016. The parties' disagreement lies in whether Defendant's failure to reinstate Plaintiff on November 4, 2016, upon his presentation of an Instacare note (or Dr. Shah's note on November 11) constitute interference with Plaintiff's FMLA right to return to work following leave.

The FMLA allows an employer to "require that a request for leave … be supported by a certification issued by the health care provider of the eligible employee…." 29 U.S.C. § 2613. The employee must "provide, in a timely manner, a copy of such certification to the employer." *Id.* "An employer must give notice of a requirement for certification each time a certification is required." 29 C.F.R. § 825.305. "The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." *Id.*

In deposition and declaration testimony, as well as in its briefing, Defendant observed various deficiencies in the documentation provided by Plaintiff when he attempted to return to work on November 4, 2016. While Plaintiff may have received guidance from Matrix regarding the deficiencies of certification relating to his earlier leave, it is undisputed that the issues with Plaintiff's November certification were not clearly related to Plaintiff at the time he presented the notes, or for weeks thereafter.

Instead, Plaintiff's note was referred to Matrix, which apparently was unresponsive for almost a month following Plaintiff's attempt to return to work on November 4. Plaintiff had presented to his employer an Instacare note virtually identical to a note with which he had been permitted to return to work just a few months earlier. When he was not permitted to return to work with that note, Plaintiff obtained a second note, from his specialist, again stating that he was able to work, effective November 4, 2016. Plaintiff wrote two letters to the Manager of Human Resources, requesting information about why his certification was insufficient. Plaintiff made every reasonable effort to provide certification of his serious medical condition satisfactory to his employer (and its third-party administrator).

Defendant, on the other hand, did not respond to either letter from Plaintiff and did not contact either the Instacare doctor or Dr. Shah with follow-up questions (despite the invitation to do so on both notes). Defendant's only affirmative efforts regarding Plaintiff's certification for the month following Plaintiff's November 4 request to return to work were the few emails Defendant sent to Matrix asking for a status update.

Plaintiff did not receive clear guidance regarding the deficiencies in his certification until he was contacted by Matrix in December of 2016. Plaintiff cannot be required to remain on uncertain leave without pay for a month and attempt to divine Defendant's (or Matrix's) quibbles with the notes he had provided. Defendant had a duty to request additional certification if it was unsatisfied with the certification provided. A month long delay in that process interfered with Plaintiff's right to return to work following FMLA leave.

Accordingly, the court finds no genuine issue of material fact with respect to Plaintiff's FMLA interference claim. Plaintiff was entitled to return from FMLA leave on November 4,

2016, and he provided certification virtually identical to certification that had been accepted by his employer in the past, plus an additional doctor's note from his specialist. Defendant's failure to reinstate Plaintiff under those circumstances was unlawful interference under the FMLA.

*Plaintiff's Retaliation Theory*

The FMLA also provides that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To make out a prima facie case of FMLA retaliation, Plaintiff must show: "(1) [he] engaged in a protected activity; (2) [defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Campbell*, 478 F.3d at 1287. Plaintiff argues that Defendant delayed his reinstatement following FMLA leave because he made complaints to management regarding his medical certification. The court does not find that the undisputed facts demonstrate a causal connection between Plaintiff's letters to Mr. Christensen and Defendant's delay in allowing Plaintiff to return to work. Accordingly, Plaintiff's motion on that theory is denied.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED with respect to Plaintiff's FMLA interference claim.

DATED this 30th day of November, 2018.

BY THE COURT:

Dee Benson
United States District Judge